UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EDGAR RAY THOMAS,

        Petitioner,

                              Civ. No. 1:17-CV-885 WJ/JMC

v.

TIMOTHY HATCH, WARDEN,
and ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO,

        Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Petitioner Edgar Ray Thomas' ("Thomas") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 by a person in state custody (Doc. 1)("Petition"). Thomas filed the Petition on August 28, 2017. Respondents, Thomas Hatch, the Warden of the Penitentiary of New Mexico, and the Attorney General of the State of New Mexico, filed their response on October 3, 2017. (Doc. 8). On August 29, 2017, United States District Judge William P. Johnson referred this matter to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. (Doc. 3). For the reasons set forth below, the Court RECOMMENDS that the Petition be denied and the case be dismissed with prejudice.

## BACKGROUND

Thomas, an inmate at the Penitentiary of New Mexico, is serving a ten-year sentence imposed by the state district court pursuant to a plea agreement. (Doc. 1, p. 1-2). The plea agreement resolved three then pending criminal actions the State of New Mexico filed against Thomas. The one most relevant to this proceeding related to conduct Clovis, New Mexico police officers observed in the early morning of April 15, 2013. Id.

On that morning, Clovis police officers responded to a reported hostage situation at a local convenience store. (Doc. 8-1, p. 50-52). Upon arrival, officers observed Thomas sitting in the driver's seat of a vehicle with the driver's-side door open. Id. Thomas was pointing a firearm at the alleged hostage, who was lying on the ground next to the car. Id.

As officers arrived, Thomas climbed out of the vehicle while holding the firearm. Id. Law enforcement ordered Thomas to place the firearm on the seat of the vehicle and raise his hands in the air. Id. Thomas complied. Id. Thomas then followed officers' commands to drop to his knees—but he did not remain in that position. According to officers, "[Thomas] started acting weird and tried to get up from his knees." Id. One officer believed "[Thomas] looked confused and kept

trying to get up."[1] When officers informed Thomas he would be shot if he continued to move, he complied with their commands and was handcuffed. Id.

Officers learned during their investigation that Thomas approached the victim in the store parking lot and asked to use his phone. Id. After the victim complied, Thomas required him to walk at gunpoint behind the car and toward the gas pumps. Id. Thomas forced the victim to his knees and asked him to call 911. Id. Thomas then took the victim's cell phone and keys and made him walk toward the victim's car while holding his revolver in the victim's side. Id.

As a result of his conduct that day, authorities charged Thomas with second-degree armed robbery, false imprisonment, aggravated assault (with a deadly weapon), and fourth-degree possession of a firearm by a felon. Upon different facts and events, authorities later charged Thomas with fourth-degree battery upon a peace officer and concealing identity. In yet another case, authorities charged Thomas with assault upon a peace officer. The office of the Public Defender represented Thomas in the three criminal actions. (Doc. 8-1, p. 4-5)

Thomas' counsel believed good cause existed for the Court to order a forensic evaluation. Accordingly, counsel sought an order requiring the New Mexico Department of Health to conduct a confidential forensic evaluation to determine Thomas' competence at the time of the convenience store incident.

---

[1] Thomas's daughter informed officers that Thomas had "been tripping . . . like that all day" and she took Thomas to the hospital earlier in the day for treatment. (Doc. 8-1, p. 50-51).

(Doc. 8-1, p. 29-30). The evaluation resulted in a stipulated order in which Thomas (through counsel) and the State accepted the psychologist's conclusion that Thomas was "competent at the time of the alleged offense, and that [he was] currently competent to stand trial." (Doc. 8-1, p. 28).

Following entry of the stipulated order, Thomas' counsel engaged in plea negotiations with prosecutors to resolve the three cases then pending against Thomas. Although Thomas faced up to thirty years in prison, counsel negotiated a plea agreement guaranteeing he would serve no more than ten years. (Doc. 8-1, p. 4). On April 24, 2014, Thomas agreed to the terms of the plea agreement (Doc. 8-1, p. 4). Particularly relevant to this case, Thomas agreed to give up his right: (1) to a trial; (2) to compel the attendance of witnesses; and (3) to cross-examine witnesses. Id. In addition to Thomas' signature reflecting his assent to the terms of the agreement, the Plea Agreement certified his counsel reviewed the agreement with Thomas, discussed the case with Thomas, and advised him of his constitutional rights and all possible defenses. Id. Thomas does not allege, and the record contains no evidence that, he informed his counsel or the state district court that he accepted a plea only because his counsel failed to interview or call certain witnesses at trial. Id. And, the record contains no evidence impeaching or undermining the expert opinion generated at Thomas' request which found him competent at the time of the convenience store incident.

Thomas personally appeared before the state district court. The judge executed the plea agreement and concluded, among other things, that Thomas understood: (1) he was giving up his right to a trial; (2) he was giving up the right to cross examine witnesses; and (3) he was giving up the right to compel witnesses of his choosing to appear and testify. Id.

In accordance with the Plea Agreement, the state district court entered a Judgment, Sentence and Order Determining Habitual Offender Status and sentenced Thomas to ten years in prison—a sentence within, but at the high-end of the agreed upon range. (Doc. 8-1, p. 1). On August 11, 2014, Thomas caused his attorney to file a Motion to Reconsider Sentence. Thomas complained that the state district court should reconsider his sentence because the court was not aware he was mentally unstable at the time of the armed robbery. Thomas further argued that because his counsel did not elicit testimony from witnesses he subpoenaed from the Curry County Detention Center, the court did not hear (what he believed to be) important testimony. Thomas also sought relief based upon additional unspecified and unsupported complaints about his trial counsel. Id.

While the Motion to Reconsider Sentence was pending, Thomas filed a pro se Petition for Writ of Habeas Corpus in the Ninth Judicial District Court, Curry County, New Mexico. (Doc. 8-1, p. 11). The Petition largely tracked the allegations contained in the Motion to Reconsider Sentence, but expanded on some

5

issues. Id. Specifically, the Petition more thoroughly explained Thomas' alleged erratic behavior on the night of April 15, 2013, in the convenience store parking lot. Id. The Petition alleged hospital employees were willing to testify "that there was something wrong with Thomas' mental state," but that his attorney did not interview them and did not want to subpoena them. Id. Thomas also complained that his attorney did not show up for most of the hearings, which other attorneys covered. Id. Thomas claimed this alleged pattern made it difficult for Thomas to discuss his case with counsel and "made the overall structure of the case suffer because [SIC] attorney could not build a strong defense . . . ." Id. Thomas argued these failures by his counsel amounted to ineffective assistance of counsel. Id.

In a Decision and Order of Summary Dismissal, the state district court addressed and denied all of the grounds Thomas raised in both his habeas petition and his Motion to Reconsider Sentence. (Doc. 1, p. 17). Thomas timely filed an appeal to the New Mexico Supreme Court, which denied review on July 25, 2017. Thomas then timely filed the instant Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. (Doc. 1, p. 1).

## ANALYSIS

Similar to his state court arguments, Thomas makes essentially two claims in his § 2254 Petition. First, Thomas claims, for various reasons, that his trial counsel performed in a constitutionally ineffective manner. (Doc. 1, p 5 ). Second,

6

Thomas claims he was incompetent at the time he participated in the conduct at the convenience store that resulted in his sentence. (Doc. 1, p. 7 ). For the reasons that follow, this court recommends denial of Thomas' request for §2254 relief.

### A. Thomas cannot prevail on his ineffective assistance claim.

The Sixth Amendment guarantees Thomas the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prevail on his ineffective assistance claim, Thomas must show that his counsel's performance was unconstitutionally deficient and, as such, resulted in prejudice. Id.; U.S. v. Flood, 713 F.3d 1281, 1286 (10th Cir. 2013).

Pursuant to Strickland, an attorney must provide, considering all circumstances, a reasonably effective performance. Id. Stated another way, the defendant must show that his counsel's representation fell below an objective standard of reasonableness. Id. at 688. This standard "requires a showing that counsel made errors so serious that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. In analyzing ineffective assistance claims, the Court's "scrutiny of counsel's performance must be highly deferential," to avoid the temptation to second-guess counsel's assistance after conviction or adverse sentence. Id. at 689. Because, after all, it is "easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. The Sixth

7

Amendment guarantees no certain result. Rather, it guarantees only Thomas' right to a reasonably competent defense lawyer who will attempt to learn all of the facts, properly analyze the law, and communicate the results of his analysis. Julian v. Bartley, 495 F.3d 487, 496 (7th Cir. 2007); Lott v. Trammell, 705 F.3d 1167, 1186 (10th Cir. 2013) (Sixth Amendment demands that defense counsel "exercise the skill, judgment and diligence of a reasonably competent defense attorney") Dyer v. Crisp, 613 F.2d 275, 278 (10th Cir. 1980) (en banc) (same).

Even if trial counsel's representation fell below an objective standard of reasonableness, the inquiry does not end. To prevail, Thomas must also demonstrate prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." Lafler v. Cooper, 566 U.S. 156, 163 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A court's review of counsel's performance must be "highly deferential," Id. at 689, because 28 U.S.C. §2254(d) "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Budder v. Addison, 851 F.3d 1047, 1050 (10th Cir. 2017)(internal quotations omitted). The court may grant habeas relief only if the state-court decision is "contrary to or involved an unreasonable application of, clearly established Federal law." 28

U.S.C. §2254(d)(1); see also Knowles v. Mirzayance, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Knowles, 556 U.S. at 123 (internal quotation omitted).

### 1. Counsel's alleged failure to call or interview identified witnesses does not constitute ineffective assistance.

Thomas first argues trial counsel performed ineffectively by failing to interview or call various witnesses on his behalf. (Doc. 1, p 5 ). Thomas does not articulate exactly who trial counsel should have interviewed or called. He appears to claim trial counsel should have called "other witnesses who would of [SIC] stated the same facts as stated by officers of the (C.P.D.) Clovis Police Department." Id. at p. 7. Although not clear, Thomas appears to believe these witnesses would have corroborated police statements that he acted abnormally on the night of his arrest in the convenience store parking lot.

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted); Marra v. Larkins, 111 F. Supp. 2d 575, 586 n. 14 (E.D.Pa. 2000) (same); see also Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir.2008) ("the decision of

which witnesses to call is quintessentially a matter of strategy for the trial attorney").

> "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."

Day, 566 F.3d at 538; see also United States v. Smith, 2013 U.S. Dist. LEXIS 177344, *47–48 (D. Colo. 2013).

In this case, Thomas does not sufficiently identify the witnesses he argues his counsel should have interviewed and called. Construing the petition liberally, even if Thomas' counsel would have called the hospital employees as witnesses, Thomas does not demonstrate that they were available to testify, and does not show the testimony would have been favorable to a particular defense. Accordingly, his claim necessarily fails. Day, 566 F.3d at 538.

Even if Thomas could meet the requirements for his failure to call witness theory to proceed, his ineffective assistance claim still lacks merit. For example, Thomas claims the witnesses he wanted to call would have "stated the same facts as stated by officers of the (C.P.D.) Clovis Police Department." (Doc. 1, p. 7). That testimony is cumulative of the officer's testimony and of his daughter's testimony that he had been "tripping" all day. In the Tenth Circuit, counsel's

failure to call cumulative witnesses is not sufficient to establish deficient performance or prejudice under Strickland. Matthews v. Workman, 577 F.3d 1175, 1193 (10th Cir. 2009) (Gorsuch, J.). In addition, the record demonstrates trial counsel based his decision not to call the witnesses upon a strategic conclusion that doing so would hurt Thomas' case. (Doc. 1, p. 22-24) ("[Counsel] denies your allegations and states that the witnesses you had identified would likely have made things worse for you as their testimony would not have been favorable.").[2] In light of the foregoing, Thomas simply has not overcome the strong presumption that his counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

### 2. Thomas' counsel's failure to raise competency does not constitute ineffective assistance.

This Court also construes Thomas' § 2254 Petition as claiming his counsel acted ineffectively by not defending his case based upon his alleged lack of competence. Competence is a question of fact. U.S. v. Boigegrain, 155 F.3d 1181, 1189 (10th Cir. 1998). In this proceeding, the Court presumes the state district court's findings of fact are correct. See 28 U.S.C. § 2254(e)(1). The Court may not grant habeas relief unless the state court based its competency determination upon an unreasonable determination of the facts in light of the evidence. Id.

---

2 Thomas does not recognize that "the speculative witness is often a two-edged sword. . . [f]or as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony." Boyle v. McKune, 544 F.3d 1132, 1138 (10th Cir. 2008).

11

Before the state district court, Thomas' counsel recognized a potential issue with Thomas' competency. (Doc. 8-1, p. 29). As a result, counsel obtained court approval for a state-funded mental health professional to confidentially examine Thomas. Id. Then, based upon the professional's conclusion that Thomas, in fact, was competent at the time of the crime and to stand trial, counsel stipulated to an order finding Thomas competent. Id. at p. 28.

In light of the determination—by his own expert—that Thomas was competent, Thomas' claim his counsel acted ineffectively by not vigorously pursuing a competency defense does not meet the standard for habeas relief under Strickland. Counsel's actions in this case regarding competence do not show a lack of objective reasonableness. They show the opposite. Counsel pursued the issue in a strategic and reasonable manner by obtaining an expert opinion regarding Thomas' competence. The fact that the expert determined Thomas was competent does not render his performance ineffective as defined by Strickland.

**B.      Thomas presents no evidence he was incompetent at the time of the crime or to stand trial.**

In addition to alleging ineffective assistance in relation to his competency, Thomas' claims he was—in fact—incompetent at the time of the crime.[3] As discussed above, the question of competence is one of fact. Boigegrain, 155 F.3d

---

[3] Thomas did not raise this issue in the proceeding below. Respondents, as they may, have chosen to waive the exhaustion requirement with respect to this issue. Accordingly, the Court addresses this issue on the merits despite the lack of exhaustion. See Granberry v. Greer, 481 U.S. 129, 134 (1987).

at 1189.  In a federal habeas proceeding, the state district court's finding of competency is presumed correct, 28 U.S.C. § 2254(e)(1), unless the person seeking habeas relief rebuts the presumption by clear and convincing evidence.[4]  Valdez v. Ward, 219 F.3d 1222, 1229 (10th Cir. 2000).  The fact that reasonable minds may differ as to the state district court's finding of competency is insufficient to meet the clear and convincing standard.  Pittman v. Sec'y, Fla. Dept. of Corrections, 871 F.3d 1231, 1244 (11th Cir. 2017).  Instead, to overcome the state district court's finding of competence, Thomas must show his version of the facts is "highly probable."  Id.; Peterson v. Exide Technologies, 477 Fed. Appx. 474, 480-81 (10th Cir. 2012) (clear and convincing evidence standard requires showing that moving party's version of facts be "highly probable").  This Court cannot "issue a writ of habeas corpus unless the state courts' competency decisions were based on an unreasonable determination of the facts in light of the evidence."  Bryson v. Ward, 187 F.3d 1193, 1201 (10th Cir. 1999).

On the merits of this claim, Thomas fails to rebut the presumption that the state district court correctly found him to be competent.  In his petition, Thomas alleges that he was "acting weird," he was "tripping," and his daughter took him to the hospital for treatment prior to the events giving rise to his conviction. (Doc. 8-1, p. 50-52).  Although these allegations could suggest Thomas might have

---

[4] Thomas' burden under §2254(d) is high because "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal."  Harrington v. Richter, 562 U.S. 86, 102-103 (2011).

13

experienced some mental instability, the Court must consider the allegations in light of the evidence that a trained mental health professional concluded Thomas was competent—both when he committed the acts and for purposes of standing trial. (Doc. 8-1, p. 28). This evidence is especially compelling in the context of this case where Thomas' counsel, based upon the expert's opinion, stipulated that he was competent. Id. Presumably, if the expert's opinion lacked foundation or was subject to attack, Thomas' counsel would not have stipulated to its findings before the state district court. It is also noteworthy that Thomas, who personally appeared before the state district court in connection with his guilty plea, presents no evidence or argument demonstrating that he raised any disagreement with the conclusions reached by his expert at that time. In the context of these facts, this Court concludes Thomas has failed to rebut by clear and convincing evidence the presumption that the state district court correctly found him to be competent.

## **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Thomas' Petition for Writ of Habeas Corpus under 28 U.S.C. §2254 be denied and that this case be dismissed with prejudice.

_____
Joel M. Carson III
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**